**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| BRENT STEVENSON,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>THE BOEING COMPANY<br><br>　　　Defendant. | CASE NUMBER: 2:22-cv-0444-DCN-SVH<br><br>**COMPLAINT<br>JURY TRIAL REQUESTED** |

The Plaintiff complaining of the Defendant would show unto this Honorable Court as follows:

**JURISDICTION AND PARTIES**

1. Plaintiff, Brent J. Stevenson, is a citizen and resident of Dorchester County, South Carolina.

2. Defendant, the Boeing Company (hereinafter, "Boeing"), upon information and belief, is a foreign corporation and is operating by virtue of the laws of the State of Delaware, and at all times herein operated as a business within the State of South Carolina and the County of Charleston.

3. This suit is brought in part, and jurisdiction lies pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq. (hereinafter, Title VII) and 42 U.S. Code § 1981 (hereinafter, Section 1981).

4. All conditions precedent to jurisdiction under § 706 of Title VII, 42 U.S.C. §2000e-5 have occurred or been complied with.

5. A charge of employment discrimination on the basis of race discrimination and retaliation was filed by the Plaintiff with the South Carolina Human Affairs Commission ("SHAC") and the Equal Employment Opportunity Commission ("EEOC").

6. Notification of the Right to Sue was received from the Equal Employment Opportunity Commission ("EEOC") on or about 9/12/2022.

7. This Complaint has been filed within 90 days of receipt of the EEOC's Notice of the Right to Sue.

8. The parties, subject matter and all things and matters herein alleged are within the jurisdiction of this Court.

**FACTS**

9. On or about November 4, 2004, the Plaintiff and the Defendant entered into an employment relationship whereby the Defendant employed the Plaintiff to begin work at that time for an indefinite term.

10. The Plaintiff was efficient and effective with his employment with the Defendant, performing at an above-standard, exceptional level.

11. On or about May 25, 2018, Plaintiff was promoted to "IT Manager" and reported to Michael Connell, one of three senior managers.

12. Plaintiff excelled in the IT Manager role receiving "exceeds expectations" in every yearly review and was recognized as "top-talent" from 2017-2020.

13. Michael Connell acknowledged that Plaintiff was the highest performing IT Manager and informed Plaintiff that he would be promoted into Mr. Connell's position upon his soon anticipated retirement; Plaintiff was introduced to the project manager as "[Mr. Connell's] successor." Plaintiff was even tasked with building the "knowledge transfer plan" to help prepare Plaintiff for the new role.

14. On October 26, 2020, Michael Connell informed Plaintiff that he would not receive the promotion; rather, Christopher "Chris" Backus, a Caucasian employee who was hired 1.5 years prior would receive the promotion despite a history of poor performance (so much so that he was subject to the next layoff) and unethical behavior.

15. Plaintiff pressed for any conceivable rationale for the last-minute decision change, to which Michael Connell stated only: "he was easier to promote."

16. In a similarly structured obtuse and terse response, Taz Olson, the Director of Network Infrastructure Services, explained only that "it was a business decision."

17. However, the rationales given were mere pretext for the true nature of the decision to promote Chris Backus: race. The Plaintiff, an African American, was not chosen for the promotion due solely to racial bias where a far less qualified white employee was chosen over him.

18. Additionally, when Michael Connell retired, Plaintiff was told that he would be forced to take on and supervise a poor performing African American employee purportedly because Michael knew "[Plaintiff] would take care of him;" notably, the poor performer was the only employee on Michael Connell's former team not to join Mr. Backus' team after his promotion.

19. Defendant continues to promote Caucasians over African Americans and has demonstrated favorable treatment and work benefits to white employees at the exclusion of minorities; the Defendant has exhibited a pattern of racial discrimination.

20. Plaintiff's predecessor on the "Proactive Network Analytics" team, Jennifer Russell (a white employee with no technical experience) was quickly promoted from a K-Level manager to an L-level manager; however, despite taking over her position (having been well qualified with over nine years of experience on the team), he remained at the K-Level despite exceeding all expectations for the three years he remained in the position; years later, he remains at the K-Level today. Ms. Russell is now a director.

21. Additionally, Patrick Monaghan (a white employee) was promoted to IT Manager despite not possessing a four-year degree as required, yet Defendant told Plaintiff not even to apply for an L-Level position because he did not yet possess 2.5 years of managerial experience.

22. Similarly, a white employee reporting to Michael Connell (Martha Graham) received a highly technical specialty award (the Associate Technical Fellow Award) despite performing an administrative-only role for the past 2.5 years.

23. After reporting concerns of racial discrimination, Plaintiff's direct manager, Jay Stern, refused to respond to any email communications and ignored Plaintiff's requests to meet face-to-face for tag-up meetings for three months (meetings to discuss growth, career path, current work objectives, goals, and achievements…etc.).

24. Mr. Stern regularly met with similarly situated white counterparts for the tag-ups which were critical to the success of the Plaintiff's position and career advancement. Once the tag-up meetings finally began, Jay Stern communicated that Plaintiff did not receive the highest performance rating because "no one in the organization received the far exceeds rating" and that Plaintiff's assessed rating "incentivizes [Plaintiff] to continue to work hard." Jay Stern's above referenced behaviors were a direct retaliatory response to Plaintiff's reports of racial discrimination.

25. Despite Plaintiff's numerous reports of discrimination and retaliation, the ethics complaint "investigation" was closed, and no action was taken to eliminate the racial discrimination. The continuation of the severe and pervasive racial discrimination has resulted in a hostile work environment.

26. As a result of the Plaintiff's race and complaints regarding the continuation of racial discrimination, the Plaintiff was not promoted and received unfair performance evaluations by the defendant.

27. But for his race, the Plaintiff would have been promoted by the defendant.

28. But for his complaints of racial discrimination, the Plaintiff would have received better performance evaluations from the Defendant and would not have been systematically ignored.

**FOR A FIRST CAUSE OF ACTION**
**Violation of Title VII of the Civil Rights Act:  Disparate Treatment**

29. The Plaintiff realleges and reiterates the preceding paragraphs as if fully set forth herein verbatim.

30. Plaintiff is a member of a protected group/class based on his race, African American.

31. Defendant promised the Plaintiff a promotion to "M" level management and to a position that he was qualified for; Defendant systematically discriminated against him based on his race by treating him less favorably than other similarly situated non-African American employees by promoting a less qualified white candidate over him and additional discriminatory practices as described herein.

32. Defendant was wanton and intentional in the discrimination of the Plaintiff in the following particulars, to wit:

    a. In failing to promote the Plaintiff based solely on his race,

    b. In promoting a white employee over the Plaintiff who was far less qualified, had been previously disciplined, was the subject of ethical complaints, and who maintained a history of poor performance,

    c. In making exceptions and allowances for the career advancement of white employees, while holding the Plaintiff to a more rigorous standard solely due to his race,

    d. In ignoring the Plaintiff's complaints of racial discrimination and retaliation,

    e. In failing to take reasonable and prudent corrective and preventive action measures when placed on notice of racial discrimination and retaliation,

    f. In purposefully assigning a lower performing employee to the Plaintiff's team so that similarly situated white managers would benefit from higher performance levels,

    g. In excluding the Plaintiff from supervisor led career growth meetings due to his race and complaints of racial discrimination,

    h. In strategically overlooking/ignoring the Plaintiff's contributions during weekly manager meetings, and

    i. In any other respects as may be identified through the course of this litigation.

33. Defendant violated Title VII of the Civil Rights Act of 1964, as amended by allowing the discrimination to exist in the workplace.

34. Plaintiff's race was a determining factor in the disparate treatment.

35. But for the Plaintiff's race, he would not have been treated less favorably than his non-African American counterparts.

36. As a direct and proximate result of the acts and practices of the Defendant in the discrimination and disparate treatment of the Plaintiff, the Plaintiff has suffered and continues to suffer from emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, damage to Plaintiff's reputation, loss of income and other past and future losses.

## FOR A SECOND CAUSE OF ACTION
### Violation of Title VII of the Civil Rights Act:  Hostile Work Environment

37. The Plaintiff realleges and reiterates the preceding paragraphs as if fully set forth herein verbatim.

38. The Plaintiff, an African American employee of the Defendant, was subject to severe and pervasive racial discrimination despite numerous complaints to management to address the racial bias and discrimination.

39. The discriminatory treatment was not limited to merely a handful of incidents, but rather included a continuous refusal to promote the Plaintiff, repeated discouragement of even applying for promotions, repeated exclusion from career advancement meetings, constant and purposeful overlooking and ignoring the Plaintiff's contributions during leadership meetings, requiring strict adherence to corporate advancement protocols as to Plaintiff while other races are given wide latitude to excel, indifference to Plaintiff's complaints of racial discrimination, retaliatory ostracism and shunning after such reports, and a complete absence of any corrective action measures to eliminate and prevent such behavior from continuing in the workplace.

40. By refusing to perform any corrective action measures to eliminate and prevent the aforementioned racial discrimination after receiving numerous reports of such discriminatory and retaliatory behavior, both written and verbal, the Defendant created an abusive, hostile work environment of severe and pervasive racial discrimination in violation of Title VII of the Civil Rights Act of 1964.

41. As a direct and proximate result of the acts and practices of the Defendant in the discrimination and creation of a hostile work environment, the Plaintiff has suffered and continues to suffer from emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, damage to Plaintiff's reputation, loss of income and other past and future losses.

## FOR A THIRD CAUSE OF ACTION
### Violation of Title VII of the Civil Rights Act:  Retaliation

42. The Plaintiff realleges and reiterates the preceding paragraphs as if fully set forth herein verbatim.

43. As stated above, the Plaintiff made numerous complaints of racial Discrimination (both written and verbal), the discrimination continued, and no corrective action measures were taken to eliminate the discrimination and prevent future harassment.

44. By complaining of racial discrimination, the Plaintiff was engaged in a protected activity under Title VII of the Civil Rights Act of 1964.

45. As a direct retaliatory measure for the Plaintiff's continual reports of racial discrimination, the Defendant not only failed to remedy the discrimination and promote the Plaintiff, but also immediately began to exclude the Plaintiff from career advancement meetings, ostracized and shunned the Plaintiff, dismissing, ignoring, and overlooking the Plaintiff's contributions in leadership meetings, and set the Plaintiff up for failure by systematically assigning him a lower performing employee to work in his team while his similarly situated counterparts were assigned high performing resources.

46. But for the Plaintiff's reports/complaints of racial discrimination, the Plaintiff would not have been subject to any of the above referenced adverse employment actions.

47. As a direct and proximate result of the acts and practices of the Defendant in the discrimination and retaliation of the Plaintiff, the Plaintiff has suffered and continues to suffer from emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, damage to Plaintiff's reputation, loss of income and other past and future losses.

## FOR A FOURTH CAUSE OF ACTION
### Violation of 42 U.S.C. §1981

48. The Plaintiff realleges and reiterates the preceding paragraphs as if fully set forth herein verbatim.

49. The Defendant intentionally discriminated against the Plaintiff based on his race, African American, which deprived him of contractual employment relationships enjoyed by other races, including but not limited to the promotion to an "M" level manager and to Michael Connell's former position as described above.

50. But for his race, the Defendant would not have deprived the Plaintiff of his promised career advancement to "M" level management, would not have ostracized and looked over the Plaintiff, would not have ignored the Plaintiff at leadership meetings and would not have excluded the Plaintiff from meetings designed to develop, nurture, and advance his career.

51. The intentional racial discrimination of the Plaintiff by the Defendant violated his protected equal rights as defined by 42 U.S. Code § 1981.

52. As a direct and proximate result of the acts and practices of the Defendant in the violation of the Plaintiff's federally protected equal rights by intentional racial discrimination, the Plaintiff has suffered and continues to suffer from emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, damage to Plaintiff's reputation, loss of income and other past and future losses.

WHEREFORE, Plaintiff prays for the following relief:

1. Judgment in favor of the Plaintiff and against the Defendant for all causes of action in an amount which is fair, just and reasonable, and for compensatory damages,

2. Judgment in favor of the Plaintiff and against Defendant for prejudgment interest, costs and attorney's fees as may be allowed by law,

3. Judgment in favor of the Plaintiff and against Defendant for past and future wages and any other work benefits he lost and continues to lose in an amount to be determined by the trier of fact, and

4. Judgment in favor of the Plaintiff and against Defendant for all actual damages, punitive damages, and any other relief this Honorable Court deems just and proper.

**SMITH AMMONS HOWLE & RICKER**

*s/Brice E. Ricker*
Brice E. Ricker, Esq.
Attorney for the Plaintiff
S.C. Bar #: 101843
Federal ID #: 12049
1668 Old Trolley Road, Suite 104
Summerville, SC 29485
Phone No.: (843) 900-2020
Fax No.: (888) 247-0844
Email:  bricker@smithammonslaw.com

Summerville, South Carolina
This 8th day of December 2022.